GARY E. WEISS (SBN 122962)
gweiss@orrick.com
JULIO C. AVALOS (SBN 255350)
javalos@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:     650-614-7400
Facsimile:      650-614-7401

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KAREN BETH YOUNG, an individual,<br><br>             Plaintiff,<br><br>      v.<br><br>FACEBOOK, INC.,<br><br>             Defendant. | Case No.  C 10-03579 JF<br><br>**DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date:         October 15, 2010<br>Time:        9:00 a.m.<br>Judge:       Honorable Judge Fogel<br>Courtroom:    3 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1
II. FACTUAL BACKGROUND ............................................................................................... 1
    A. Plaintiff's Bipolar Emotional Disability And Facebook Accounts ......................... 2
    B. The "Dear Lord" Page .............................................................................................. 3
III. ARGUMENT ........................................................................................................................ 4
    A. Relevant Legal Principles ......................................................................................... 4
    B. Plaintiff Has Failed To State Claims For Civil Rights Violations Under the U.S. Constitution ........................................................................................................ 5
    C. Plaintiff's Breach of Contract Claim is Barred and Insufficiently Pleaded ............ 7
    D. Plaintiff's Implied Covenant Claim is Barred and Insufficiently Pleaded .............. 9
    E. Plaintiff's Negligence Claim is Barred and Insufficiently Pleaded. ...................... 10
    F. Plaintiff's Fraud Claim is Barred and Insufficiently Pleaded. ............................... 12
IV. CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page(s)**

*American Mfrs. Mut. Ins. Co.* v. *Sullivan*,
  526 U.S. 40 (1999) ......................................................................................................... 6

*Ashcroft* v. *Iqbal*,
  129 S. Ct. 1937 (2009) ................................................................................................... 4

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007) ....................................................................................................... 4

*Beverage Distributors, Inc.* v. *Olympia Brewing Co.*,
  440 F.2d 21 (9th Cir. 1971) ........................................................................................... 7

*Black* v. *Google Inc.*,
  2010 U.S. Dist. LEXIS 82905 (N.D. Cal. Aug. 13, 2010) ................................... 5, 7, 10

*Carafano* v. *Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ..................................................................................... 10

*In re Facebook PPC Adver. Litig.*,
  2010 U.S. Dist. LEXIS 39776 (N.D. Cal. April 22, 2010) ........................................ 8, 9

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157, 1162 (9th Cir. 2008) ............................................................................. 5

*Jackson v. Brown*,
  513 F.3d 1057, 1079 (9th. Cir. 2008) ............................................................................ 6

*Joaquin* v. *Geico Gen. Ins. Co.*,
  2008 U.S. Dist. LEXIS 2077 (N.D. Cal. Jan. 2, 2008) .................................................. 8

*Jones* v. *Community Redevelopment Agency of Los Angeles*,
  733 F.2d 646 (9th Cir. 1984) ......................................................................................... 5

*Liao* v. *Ashcroft*, No. C 08-2776 PJH,
  2009 WL 636116 (N.D. Cal. Mar. 11, 2009) ................................................................ 6

*Masters* v. *Screen Actors Guild*,
  2004 U.S. Dist. LEXIS 27297 (N.D. Cal. Dec. 8, 2004) ............................................... 6

*McMillan* v. *Department of Interior*,
  907 F. Supp. 322 (D. Nev. 1995), *aff'd*, 87 F.3d 1320 (9th Cir. 1996) ......................... 5

*Miron* v. *Herbalife Int'l, Inc.*,
  11 Fed. Appx. 927, (9th Cir. 2001) ............................................................................... 7

*Optinrealbig.com* v. *Ironport Sys.*,
  323 F. Supp. 2d 1037 (N.D. Cal. 2004) ....................................................................... 11

# TABLE OF AUTHORITIES
## (Cont.)

### FEDERAL CASES

**Page(s)**

*Schucker* v. *Rockwood*,
    846 F.2d 1202 (9th Cir. 1988) ................................................................................................ 5

*Sprewell* v. *Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................................................. 4

*Van Ort* v. *Estate of Stanewich*,
    92 F.3d 831 (9th Cir. 1996) .................................................................................................... 6

*West* v. *Atkins*,
    487 U.S. 42 (1988) .................................................................................................................. 6

*Zeran* v. *America Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ........................................................................................... 10, 11

### STATE CASES

*Berkley* v. *Dowds*,
    152 Cal.App.4th 518 (2007) .................................................................................................. 11

*Carma Dev't, Inc.,v. Marathon Dev't Cal., Inc.*,
    2 Cal. 4th 342 (1992) ............................................................................................................ 10

*Committee on Children's Television, Inc.* v. *General Foods Corp.*,
    35 Cal. 3d 197 (1983) ........................................................................................................... 12

*Conroy* v. *Regents of University of California*,
    45 Cal. 4th 1244 (2009) ........................................................................................................ 12

*Gilmer* v. *Ellington*,
    159 Cal.App.4th 190 (2008) .................................................................................................. 11

*Guz* v. *Bechtel National, Inc.*,
    24 Cal. 4th 317 (2000) ............................................................................................................ 9

*Murphy* v. *Hartford Accident & Indem. Co.*,
    177 Cal.App.2d 539 (1960) ................................................................................................. 7, 8

*Jacoves* v. *United Merch. Corp.*,
    9 Cal.App.4th 88 (1992) ....................................................................................................... 11

*Racine & Laramie, Ltd.* v. *Department of Parks & Recreation*,
    11 Cal.App.4th 1026 (1992) ................................................................................................... 9

*Shin* v. *Kong*,
    80 Cal.App.4th 498 (2000) ................................................................................................... 11

# TABLE OF AUTHORITIES
## (Cont.)

**Page(s)**

### FEDERAL STATUTES

42 U.S.C. § 1983 ................................................................................................................... 5, 6

47 U.S.C. § 230 ............................................................................................................. 1, 5, 7, 10

Fed. R. Civ. P. Rule 8(a)(2) ....................................................................................................... 4

Fed. R. Civ. P. Rule 12(b)(6) .................................................................................................. 4, 8

### MISCELLANEOUS

3 Witkin, Cal. Procedure, Pleading at § 574 (2d ed. 1971) ........................................................ 12

# NOTICE OF MOTION AND MOTION

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday, October 15, 2010 at 9:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Judge Jeremy Fogel, United States District Court, 280 S. First Street, San Jose, CA 95113, Facebook, Inc. ("Facebook") will move the Court for an order dismissing Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: August 24, 2010                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                          */s/ Julio C. Avalos*
                                          JULIO C. AVALOS
                                          Attorneys for Plaintiff
                                          FACEBOOK, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's *pro se* Complaint against Facebook, Inc. ("Facebook") should be dismissed in its entirety. The Complaint asserts six causes of action: (1) Violation of the First Amendment of the U.S. Constitution; (2) Violation of the Fourteenth Amendment of the U.S. Constitution; (3) Breach of Contract; (4) Breach of Implied Covenant of Good Faith and Fair Dealing; (5) Negligence; and (6) Fraud. But all of Plaintiff's claims are without merit. The constitutional violations seem to be based on little more than an allegation that Plaintiff was unable to obtain "human interaction" following the termination of her Facebook account. Even if this allegation was enough to state a claim against a governmental entity, which it is not, it certainly is insufficient when lodged against Facebook, a private company. Plaintiff's remaining claims are similarly defective, as they are based on non-existent obligations or duties that Facebook never agreed to, never assumed, and, in most instances, contractually disavowed. Importantly, these remaining claims allegedly arise from content and communications allegedly published on the Facebook website by third-parties and are thus barred by the Communications Decency Act, 47 U.S.C. § 230 ("CDA").

Though Facebook is sympathetic to Plaintiff's claimed mental health issues, Plaintiff's purported disability does not bolster the claims she asserts. Those claims are fatally flawed, and amendment will not cure these deficiencies. Accordingly, Facebook respectfully requests that the Court dismiss Plaintiff's complaint in its entirety with prejudice and without leave to amend.

## II. FACTUAL BACKGROUND

Plaintiff's claims appear to arise out of two distinct sets of allegations. *See* Exhibit A, Plaintiff's Complaint ("Compl.") at ¶ 7.[1] The first set of allegations relates to Plaintiff's claimed "bipolar emotional disability" and Facebook's alleged failure to provide assistance to Plaintiff with that disability. *Id.* These allegations appear to form the basis of Plaintiff's constitutional

---

[1] Attached as Exhibit 1 is a true and correct copy of Plaintiff's Complaint and attached Exhibits, served on Facebook on August 3, 2010. The copy of the complaint filed with Facebook's removal papers on August 12, 2010 was inadvertently filed with Page 11 missing. The attached Exhibit corrects this mistake.

OHS West:260975504.2 - 1 - DEFENDANT FACEBOOK'S NOTICE OF MOTION AND MOTION TO DISMISS PER 12(b)(6) CASE NO.: C 10-03579 JF

1  claims against Facebook.  The second set of allegations relates to an allegedly offensive webpage
2  created by a third-party Facebook user that Plaintiff claims to have viewed on the Facebook site.
3  Plaintiff claims that she suffered abuse from third-parties as a result of criticizing the allegedly
4  offensive webpage.  These allegations appear to form the basis of Plaintiff's four remaining
5  claims.

6  **A.     Plaintiff's Bipolar Emotional Disability And Facebook Accounts.**

7  Plaintiff alleges that she "has a bipolar emotional disability." *Id*.  According to the
8  Complaint, "Facebook does not provide any help or assistance to people with this disability." *Id*.
9  Although not self-evident from the pleading, it appears that Plaintiff seeks such "help or
10 assistance" in the form of "human interaction" between her and Facebook that Facebook refused
11 to provide.  *Id*.  At the same time, Exhibit D to Plaintiff's Complaint reveals that a Facebook
12 representative in fact responded to Plaintiff's inquiries, provided the reason why Plaintiff's
13 account was terminated (for "violating Facebook's Statement of Rights and Responsibilities"),
14 and advised Plaintiff that her account would not be reinstated. *Id.* at Ex. D, pp. 4-5.

15 Other than her claim that she did not receive human interaction, which is contradicted by
16 her own pleading, Plaintiff fails to allege any other manner in which her disability impacted her
17 ability to the use the site.  Rather, her allegations indicate that in the few months that she was a
18 Facebook user, she extensively used, and perhaps abused, the site in a variety of ways.
19 According to Ms. Young, she joined Facebook in February 2010 in order to "interact with family,
20 friends and strangers." *Id*. at ¶ 10.  Ms. Young further claims to have established a number of
21 Facebook profiles and Pages aimed at combating or discussing cancer.  *Id*.  One of these profiles,
22 entitled the "Cartesian Plane For The Cure," "was geared toward mathematics," particularly how
23 "[t]hings such as differential equations and numerical analysis are being utilized to help tailor
24 different treatment options in the cancer field." *Id*.  Ms. Young began sending Facebook
25 "friendvites" "to others who she believed to be sincere in the cancer cause." *Id*.

26 Ms. Young's personal profile page eventually reached the maximum friend allotment for a
27 personal profile of 5,000 friends. *Id*.  "Plaintiff was upset about this for many reasons" and soon
28

1  claims against Facebook.  The second set of allegations relates to an allegedly offensive webpage
2  created by a third-party Facebook user that Plaintiff claims to have viewed on the Facebook site.
3  Plaintiff claims that she suffered abuse from third-parties as a result of criticizing the allegedly
4  offensive webpage.  These allegations appear to form the basis of Plaintiff's four remaining
5  claims.

6        **A.**      **Plaintiff's Bipolar Emotional Disability And Facebook Accounts.**

7  Plaintiff alleges that she "has a bipolar emotional disability." *Id*.  According to the
8  Complaint, "Facebook does not provide any help or assistance to people with this disability." *Id*.
9  Although not self-evident from the pleading, it appears that Plaintiff seeks such "help or
10 assistance" in the form of "human interaction" between her and Facebook that Facebook refused
11 to provide.  *Id*.  At the same time, Exhibit D to Plaintiff's Complaint reveals that a Facebook
12 representative in fact responded to Plaintiff's inquiries, provided the reason why Plaintiff's
13 account was terminated (for "violating Facebook's Statement of Rights and Responsibilities"),
14 and advised Plaintiff that her account would not be reinstated. *Id.* at Ex. D, pp. 4-5.

15 Other than her claim that she did not receive human interaction, which is contradicted by
16 her own pleading, Plaintiff fails to allege any other manner in which her disability impacted her
17 ability to the use the site.  Rather, her allegations indicate that in the few months that she was a
18 Facebook user, she extensively used, and perhaps abused, the site in a variety of ways.
19 According to Ms. Young, she joined Facebook in February 2010 in order to "interact with family,
20 friends and strangers." *Id*. at ¶ 10.  Ms. Young further claims to have established a number of
21 Facebook profiles and Pages aimed at combating or discussing cancer.  *Id*.  One of these profiles,
22 entitled the "Cartesian Plane For The Cure," "was geared toward mathematics," particularly how
23 "[t]hings such as differential equations and numerical analysis are being utilized to help tailor
24 different treatment options in the cancer field." *Id*.  Ms. Young began sending Facebook
25 "friendvites" "to others who she believed to be sincere in the cancer cause." *Id*.

26 Ms. Young's personal profile page eventually reached the maximum friend allotment for a
27 personal profile of 5,000 friends. *Id*.  "Plaintiff was upset about this for many reasons" and soon
28

1   "started a petition page to speak out against this titled, 'Join Karen, petition Facebook Say No To
2   5000 Friends.'" *Id*.

3   Plaintiff claims that her Facebook accounts were subsequently terminated. *Id*. at ¶ 9.
4   Following this termination, Plaintiff alleges that she "sought human interaction and assistance
5   regarding her account on many occasions, with no response either prior to or after her account
6   deactivation." *Id*. Plaintiff allegedly first sent "numerous emails [to Facebook] that were
7   unanswered." *Id*. Next, Plaintiff "made numerous telephone calls to Facebook headquarters, all
8   of which were answered as computer voice messaging with instructions to send more emails." *Id*.
9   Upset by Facebook's alleged "inefficient and hurtful handling" of her account, "Plaintiff drove
10  from the east coast [Plaintiff resides in Maryland] to Facebook Headquarters" in Palo Alto,
11  presumably so as to reinstate her account as well as to obtain some "human interaction" from
12  Facebook. *Id*. at ¶ 9.

13  While in Facebook's lobby, Plaintiff alleges that she was "told to fill out a form and
14  someone would contact her online because nobody could meet with her in person or talk to her on
15  the telephone." *Id*. At some point, Plaintiff claims that she succeeded in having her account
16  reinstated, and "drove back to the east coast with account enabled [sic]." *Id*. However, Plaintiff
17  claims that "[t]wo days after arriving in Maryland, Plaintiff's account was once again disabled
18  with no explanation why." *Id*. She then drove back to California, where she purports to reside
19  temporarily. *Id*. at ¶¶ 1, 9.

20  **B.    The "Dear Lord" Page.**

21  Apparently unrelated to this first set of facts, Ms. Young goes on to allege that she was
22  "subjected to extensive, hateful actions when she came across a hate page that she saw advertised
23  which prayed for death." *Id*. at ¶ 11. Specifically, Ms. Young alleges that she came upon an
24  user-created Facebook Page "titled, 'DEAR LORD, THIS YEAR YOU TOOK MY FAVORITE
25  ACTOR, PATRICK SWAYZIE [sic]. YOU TOOK MY FAVORITE ACTRESS, FARAH
26  FAWCETT. YOU TOOK MY FAVORITE SINGER, MICHAEL JACKSON. I JUST
27  WANTED TO LET YOU KNOW, MY FAVORITE PRESIDENT IS BARACK OBAMA.
28  AMEN" (herein, the "Dear Lord Page"). Ms. Young alleges that she "spoke out against the page"

1 and that as a result she was "subjected to hatred, violence, discrimination, threats, pornography, kkk, violence and personal attacks" from third-parties on the Facebook site. *Id*. Ms. Young claims that the Dear Lord Page "regularly displays and engaged in direct violations of the Facebook terms and United States law." *Id*. At no point does Ms. Young allege that Facebook created the Dear Lord Page nor that Facebook itself created any of the alleged insults that she received.

## III. ARGUMENT

### A. Relevant Legal Principles.

A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) if, from the face of the complaint, the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While a plaintiff does not need detailed factual allegations, she must nonetheless "provide the grounds of his 'entitle[ment] to relief' . . . [which] requires more than labels and conclusions, and a formulaic recitation of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

The Court need not credit conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Rule 12(b)(6) must be read in conjunction with the pleading requirements of Rule 8(a)(2). *Sprewell*, 266 F.3d at 988. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) requires a "showing, rather than a blanket assertion, of entitlement to relief . . . [w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 556 n.3. Though, a pleading must contain "only enough facts to state a claim to relief that is plausible on its face," *Id*. at 570, if the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id*.

/ / /

1   Though it is true that "[t]he allegations of a *pro se* complaint … should be held to less
2   stringent standards than formal pleadings drafted by lawyers," a *pro se* complaint should
3   nevertheless be dismissed if the complaint and its allegations establish that the plaintiff has not
4   alleged and cannot allege a claim.  *Jones v. Community Redevelopment Agency of Los Angeles*,
5   733 F.2d 646, 649 (9th Cir. 1984); *see also Schucker v. Rockwood*, 846 F.2d 1202, 1204-05 (9th
6   Cir. 1988) (affirming dismissal of *pro se* complaint); *McMillan v. Department of Interior*, 907 F.
7   Supp. 322, 329 (D. Nev. 1995), *aff'd*, 87 F.3d 1320 (9th Cir. 1996) (dismissing *pro se* complaint
8   without leave to amend because some claims legally barred and others frivolous).

9   Finally, "Section 230 of the CDA immunizes providers of interactive computer services
10  against liability arising from content created by third parties."  *Black v. Google Inc.*, No. 10-
11  02381 CW, 2010 U.S. Dist. LEXIS 82905, at *4-*5 (N.D. Cal. Aug. 13, 2010) (J., Wilken)
12  (quoting *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157,
13  1162 (9th Cir. 2008)).  "In enacting § 230, Congress wanted to encourage the unfettered and
14  unregulated development of free speech on the Internet, and to promote the development of e-
15  commerce."  *Id*. at *5 (citations omitted).  Accordingly, "based on the congressional intent …
16  courts have treated [CDA] immunity as quite robust," and have held that "[a]ll doubts must be
17  resolved in favor of immunity."  *Id*. at. *6.

18  **B.    Plaintiff Has Failed To State Claims For Civil Rights Violations Under the U.S. Constitution.**
19

20  Plaintiff's first two causes of action allege that Facebook has violated the United States
21  Constitution, specifically the First and Fourteenth Amendments.  How Facebook is alleged to
22  have committed these "civil rights" violations is not entirely clear.  But, regardless, the claims fail
23  because Plaintiff cannot allege that Facebook is a governmental entity or otherwise acting jointly
24  with the state.

25  For both of her constitutional claims, Plaintiff alleges that she is "a United States Citizen
26  and this action arises under 42 U.S.C. 1983."  Compl. at ¶¶ 17, 24.  "To state a claim under §
27  1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the
28  United States, and must show that the alleged deprivation was committed by a person acting

1   under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). "A
2   defendant has acted under color of state law when he or she has 'exercised power possessed by
3   virtue of state law and made possible only because the wrongdoer is clothed with authority of
4   state law." *Id*. at 49.

5   Thus, "[g]enerally, only a state actor, and not a private individual or entity, may be liable
6   under § 1983 because § 1983 excludes from its reach merely private conduct, no matter how
7   discriminatory or wrong." *Liao v. Ashcroft*, No. C 08-2776 PJH, 2009 WL 636116, at *4 (N.D.
8   Cal. Mar. 11, 2009) (citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999)). As the
9   Ninth Circuit has summarized: "There is no right to be free from the infliction of constitutional
10  deprivations by private entities." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.
11  1996).[2]

12  The only time that "a § 1983 action can lie against a private entity [is] when the private
13  entity is a willful participant in joint action with the State or its agents." *Id*. "[T]he ultimate
14  inquiry is whether the alleged infringement of federal rights is fairly attributable to the
15  government." *Id*.

16  Plaintiff's Complaint lacks any allegation that Facebook is a governmental entity. In fact,
17  Facebook is not. Plaintiff's Complaint also lacks any facts sufficient to establish that Facebook's
18  alleged actions were undertaken "in joint action with the State or its agents."

19  Accordingly, Plaintiff has failed to state a claim for violation of the First or Fourteenth
20  Amendments. No amendment would cure this defect. Plaintiff's first two causes of action should
21  accordingly be dismissed with prejudice.

22  ///
23  ///

---

[2] Plaintiff grounds both of her constitutional claims in 42 U.S.C. § 1983. *See* Compl. at ¶¶ 17, 24. However, the "state action" requirement would apply equally to allegations of direct violation of the First and Fourteenth Amendments. *See Masters v. Screen Actors Guild,* No. CV 04-2102 SVW, 2004 U.S. Dist. LEXIS 27297, at *41 (N.D. Cal. Dec. 8, 2004) ("[T]o raise a First Amendment claim against a private entity, a plaintiff must show state action on the part of the private entity) (citations omitted); *see also Jackson v. Brown*, 513 F.3d 1057, 1079 (9th. Cir. 2008) ("The Fourteenth Amendment's right to due process only protects discrimination that results from state action.") (citations omitted).

### C.     **Plaintiff's Breach of Contract Claim is Barred and Insufficiently Pleaded.**

Ms. Young's breach of contract claim should also be dismissed. First, Ms. Young's breach of contract claim asserts that "[t]he customs, practices, and policies of Facebook, Inc. amounted in the deliberate indifference to the rights of Plaintiff." Compl. At ¶ 31. While unclear what rights are at issue, to the extent the alleged harm stems from user-generated content, Ms. Young's claims are barred by the CDA. The CDA provides service providers such as Facebook with broad immunity from claims based on content created by third-parties. *See* Section III. A, *supra*; *see also* 47 U.S.C. § 230. As Judge Wilken recently held in dismissing a similar complaint: "A fair reading of Plaintiff's complaint demonstrates that they seek to impose liability on Defendant for content created by an anonymous third party . . . Based on these allegations, Defendant is immune from their suit." *Black*, 2010 U.S. Dist. LEXIS 82905, at *6 (N.D. Cal. Aug. 13, 2010). The Court should similarly dispose of the current Complaint, which makes clear that Plaintiff seeks redress for third-party content and communications that Facebook had no hand in creating.

Second, to the extent Plaintiff's claims are not based on user-generated content, Plaintiff's claims still fail. Plaintiff's allegations that "[t]he customs, practices, and policies of Facebook, Inc. amounted in the deliberate indifference to the rights of Plaintiff" do not put Facebook on notice of what contract terms it is alleged to have breached. But more importantly, the agreement at issue does not contain any language or terms giving rise to the obligations that Plaintiff seeks to enforce.[3] To the contrary, the SRR expressly disavows such obligations.

It is black-letter law that "[i]n order for a breach of contract action to be based on an instrument in writing, the writing must express the obligation sued upon." *Miron v. Herbalife Int'l, Inc.*, 11 Fed. Appx. 927, 929 (9th Cir. 2001) (citing, *Murphy v. Hartford Accident & Indem.*

---

[3] Facebook's Statement of Rights and Responsibilities ("SRR") is the only operative contract at issue. Though Plaintiff references various Facebook policies, such policy statements are not "contracts." *See Beverage Distributors, Inc. v. Olympia Brewing Co.*, 440 F.2d 21, 29 (9th Cir. 1971) ("A gratuitous and unsolicited statement of policy or of intention which receives the concurrence of the party to whom it is addressed, does not constitute a contract. Or as it is sometimes stated, since an offer must be a promise, a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer.") (citations omitted).

1  *Co.*, 177 Cal.App.2d 539 (1960)).  Thus, where a plaintiff fails to allege any provision of a

2  contract which supports its claim, dismissal of the breach of contract claim is proper.  *Id*. at *4;

3  *see also Joaquin v. Geico Gen. Ins. Co.*, No. C 07-3259 JSW, 2008 U.S. Dist. LEXIS 2077, at *6-

4  7 (N.D. Cal. Jan. 2, 2008) (granting defendant's Rule 12(b)(6) motion to dismiss where there was

5  no language in the contract requiring defendant to perform a task in a certain way).  Here,

6  Plaintiff does not allege any provision of the Statement of Rights and Responsibilities that

7  contains obligations that Plaintiff has sued upon.  No such provisions exist.

8        In fact, the parties agreed to terms expressly disavowing the liability upon which Plaintiff

9  now seeks to sue.  For instance, Section 2.3 of the SRR states:

10  > WE TRY TO KEEP FACEBOOK UP, BUG-FREE, AND SAFE, BUT YOU USE IT AT YOUR OWN RISK.  WE ARE PROVIDING FACEBOOK "AS IS" WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT.  **WE DO NOT GUARANTEE THAT FACEBOOK WILL BE SAFE OR SECURE.  FACEBOOK IS NOT RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD PARTIES, AND YOU RELEASE US … FROM ANY CLAIMS AND DAMAGES, KNOWN AND UNKNOWN, ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY CLAIM YOU HAVE AGAINST ANY SUCH THIRD PARTIES.**

16  Compl. at Ex. A, Section 15.3 (emphasis added).  This Court has previously enforced such

17  unambiguous disclaimers in Facebook's SRR and used them to block claims, such as Plaintiff's,

18  allegedly arising out of use of the Facebook service.  *In re Facebook PPC Adver. Litig.*, No. 5:09-

19  CV-03043, 2010 U.S. Dist. LEXIS 39776, at *13 (N.D. Cal. April 22, 2010) (Fogel, J.).

20        The contractual provisions cited by Ms. Young elsewhere in her Complaint do not

21  overcome this disclaimer or otherwise give rise to a cause of action.  For instance, Ms. Young

22  cites Section 18, Nos. 3 and 7 of Facebook's SRR.  Compl. at ¶ 5.  But provision No. 3 merely

23  states that any failure by Facebook to enforce any section of the SRR will not be considered a

24  waiver of that section, and provision No. 7 provides that "nothing … [in the SRR] shall prevent

25  us [Facebook] from complying with the law."  *Id*. at Ex. A, Sections 18.3 & 18.7.  Ms. Young

26  also claims that Facebook has not adhered to its obligations set forth in Section 3 titled Safety,

27  / / /

28  / / /

1  numbers 6,7,10, and 12, as well as Section 5 titled Protecting Other People's Rights, number 1.[4]
2  *See* Compl. at ¶ 5; Ex. A, Sections 3.6, 3.7, 3.10, 3.12 & 5.1.   These provisions, however, place
3  no obligations on Facebook.  Rather, they articulate obligations that users such as Ms. Young
4  agree to abide by in order to continue their use of Facebook's services.  *See* Compl. at Ex. A,
5  Sections 3.6, 3.7, 3.10, 3.12 & 5.1.

6  Accordingly, Ms. Young has failed to state a claim for breach of contract and the claim
7  should be dismissed without leave to amend.

**D.      Plaintiff's Implied Covenant Claim is Barred and Insufficiently Pleaded.**

9  Ms. Young's Complaint also invokes the implied covenant of good faith and fair dealing.
10 But the implied covenant of good faith and fair dealing "cannot impose substantive duties or
11 limits on the contracting parties beyond those incorporated in the specific terms of their
12 agreement."  *Guz  v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349-350 (2000).  Rather, the implied
13 covenant "exists merely to prevent one contracting party from unfairly frustrating the other
14 party's right to receive the benefits of the agreement <u>actually made</u>."  *Id*.  (emphasis added).  In
15 other words, the covenant cannot import into the parties' contract terms or contractual provisions
16 that were absent from the actual underlying agreement.  *See*, *e.g.*, *In Re Facebook PPC Adver.*
17 *Lit.*, 2010 U.S. Dist. LEXIS 39776, at *13-14 ("The implied covenant will not apply where no
18 express term exists on which to hinge an implied duty, and where there has been compliance with
19 the contract's express terms") (citations omitted).  Thus it has been well-established that the
20 covenant does not "protect some general public policy interest not directly tied to the contract's
21 purpose."  *Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal.App.4th 1026,
22 1031 (1992).

23 Here, Ms. Young seeks to use the implied covenant of good faith and fair dealing to
24 import various terms into the contract.  For instance, Ms. Young alleges that her claim arises
25 because, *inter alia*:

---

[4] Plaintiff also alleges in her Complaint that Facebook failed to adhere to Section 5.4 of Facebook's SRR which states, "[i]f we remove your content for infringing someone else's copyright, and you believe we removed it by mistake, we will provide you with an opportunity to appeal."  *See* Compl. at ¶5; Ex. A, Section 5.4.  Plaintiff's allegations, however, do not include copyright infringement, rendering this provision irrelevant and inapplicable.

- "Facebook has failed to provide adequate site management, over site [sic] and enforcement that is necessary to prevent hate speech and actions"

- "Facebook, Inc.'s lack of responsiveness and poor site management demeaned the purpose of the contractual relationship, which was to provide Plaintiff with a secure environment according to the law."

- "Facebook, Inc. shows a lack of concern for public safety and health by supporting the Dear Lord prayer for death hate page threatening the life of the President of the United States."

Compl. at ¶¶ 42-24.

The parties never agreed that Facebook would do any of these things. The covenant of good faith cannot alter this. *See Carma Dev't, Inc.,v. Marathon Dev't Cal., Inc.*, 2 Cal. 4th 342, 374 (1992) ("We are aware of no reported case in which a court has held [that] the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement.").

At bottom, Plaintiff's claims seem based on allegations that third-parties criticized her on Facebook after she herself criticized an allegedly offensive third-party webpage. Even if such claims were otherwise pleaded with specificity as to Facebook, which they are not, they would nevertheless be barred by the CDA, which provides computer service providers such as Facebook with broad immunity from third-party content. *See* Section III.A, *supra*; *see also* 47 U.S.C. § 230. Once again, "[a] fair reading of Plaintiffs' complaint demonstrates that [she] seek[s] to impose liability on Defendant for content created by an anonymous third party … Based on these allegations, Defendant is immune from their suit." *Black,* 2010 U.S. Dist. LEXIS 82905, at *6-*7. Facebook is thus immune from Plaintiff's implied covenant of fair dealing claim and it should be dismissed without leave to amend.

### E. Plaintiff's Negligence Claim is Barred and Insufficiently Pleaded.

The CDA immunizes interactive computing services such as Facebook against claims sounding in tort based on user-generated content. *See*, *e.g.*, *Carafano v. Metrosplash.com, Inc.* 339 F.3d 1119 (9th Cir. 2003) (stating that in enacting the CDA, "Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for parties' potentially injurious messages.") (citing *Zeran*

1  *v. America Online, Inc.*, 129 F.3d 327, 330-331 (4th Cir. 1997)); *see also Optinrealbig.com v.*
2  *Ironport Sys.,* 323 F. Supp. 2d 1037, 1044 (N.D. Cal. 2004) (finding that the CDA bars "[t]he
3  imposition of tort liability on service providers for the communications of others").

4        Even if Ms. Young's negligence claim were not barred by the CDA, she nevertheless fails
5  to state a claim.  In order to establish a prima facie case of negligence, a plaintiff must allege: (i) a
6  duty of care; (ii) a breach of that duty; (iii) proximate causation; and (iv) damages.  *See Berkley v.*
7  *Dowds*, 152 Cal.App.4th 518, 526 (2007).  The plaintiff must prove all four of these elements,
8  and the absence of any one is "fatal to a negligence claim."  *Gilmer v. Ellington*, 159 Cal.App.4th
9  190, 195 (2008).  A duty of care can arise from a statutory obligation, a contractual relationship, a
10 special relationship between the parties, or because of the general character of the activity in
11 question.  *Shin v. Kong*, 80 Cal.App.4th 498, 504 (2000). "Facts which give rise to the existence
12 of a duty in a complaint for negligent injury are necessary, and a complaint which does not state
13 facts to show that duty is fatally defective."  *See Jacoves v. United Merch. Corp.*, 9 Cal.App.4th
14 88, 113 (1992).

15       Ms. Young's Complaint alleges no such facts and instead relies on the sort of conclusory
16 recitation of the elements expressly disallowed in *Twombly* and *Iqbal*.  For instance, Ms. Young
17 alleges that Facebook "has a legal duty to use due care when hiring and training personnel to
18 monitor and enforce website activity according to their outlined contractual agreement."  Compl.
19 at ¶ 56.  But Ms. Young identifies nothing that would give rise to this duty.  Ms. Young
20 concludes that Facebook "has failed in its responsibility to condemn all acts or statements that
21 inspire, imply, incite or directly threaten violence against anyone," but fails to provide the Court
22 with any guidance or factual allegations that support why Facebook would have such an
23 overarching duty.  Indeed, imposing such a duty on Facebook would largely undermine the CDA
24 and the broad protections it grants Facebook vis-à-vis third-party content on its website.  Ms.
25 Young's remaining allegations are equally conclusory or otherwise without support.

26       Accordingly, the Court should dismiss Plaintiff's fifth cause of action for negligence for
27 failure to state a claim.
28 ///

### F. Plaintiff's Fraud Claim is Barred and Insufficiently Pleaded.

Ms. Young has also failed to state a claim for fraud. "The elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1255-56 (2009).

"Fraud actions … are subject to strict requirements of particularity in pleading." *Comm. on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 216 (1983). "[A]llegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense. Accordingly the rule is everywhere followed that fraud must be specifically pleaded." *Id*. "The effect of this rule is twofold: (a) General pleading of the legal conclusion of 'fraud' is insufficient; the facts constituting the fraud must be alleged; (b) Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings … will not ordinarily be invoked to sustain a pleading defective in any material respect." *Id*. (3 Witkin, Cal. Procedure, Pleading at § 574 (2d ed. 1971)).

Here, not only is Ms. Young's fraud claim not pled with particularity, the allegations supporting it are conclusory. For instance, she fails to identify with particularity the supposedly fraudulent statements. Rather, the Complaint states that "Defendants [sic] terms of agreement are deceptive in the sense of misrepresentation and false representation of company standards," Compl. at ¶ 64, "Defendant failed to follow established policies and practices thus putting Plaintiff in a position of unnecessary harm," *id*. at ¶ 65, and "Defendant mislead [sic] Plaintiff by allowing and creating an environment threatening and harmful." *Id*. at ¶ 66. Such generalized allegations do not establish a prima facie case of fraud, let alone support its heightened pleading standard. Accordingly, the fraud claim should be dismissed.

/ / /

/ / /

/ / /

## IV. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that Plaintiff's Complaint be dismissed in its entirety. Facebook further requests that the Complaint be dismissed with prejudice due to the futility of its claims.

Dated: August 24, 2010           ORRICK, HERRINGTON & SUTCLIFFE LLP


                                          */s/ Julio C. Avalos*
                                           JULIO C. AVALOS
                                          Attorneys for Plaintiff
                                          FACEBOOK, INC.