1

2                                                                **E-Filed 10/25/2010**

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                              **SAN JOSE DIVISION**

11

12   KAREN BETH YOUNG,                    Case Number 5:10-cv-03579-JF/PVT

13                          Plaintiff,     ORDER[1] GRANTING MOTION TO
                                           DISMISS FOR FAILURE TO STATE
14              v.                         A CLAIM UPON WHICH RELIEF
                                           MAY BE GRANTED
15   FACEBOOK, INC.,

16                          Defendant.     [re: docket no. 19]

17

18        On July 30, 2010, Plaintiff Karen Beth Young filed a complaint in the Superior Court of

19   California against Defendant Facebook, Inc., alleging claims, pursuant to 42 U.S.C. § 1983,  for

20   violation of her First and Fourteenth Amendment rights, as well as state law claims for breach of

21   contract, breach of the implied covenant of good faith and fair dealing, negligence, and fraud.

22   Facebook removed the action to this Court on August 13, 2010, and thereafter brought the

23   instant motion to dismiss.  For the reasons set forth below, Facebook's motion will be granted,

24   and Young's complaint will be dismissed with leave to amend.

25

26

27

28        [1]      This disposition is not designated for publication in the official reports.

# I. BACKGROUND

In February 2010, Young opened a personal account on Facebook.[2]  She subsequently created additional Facebook pages for the "Cancer Forum," "Cartesian Plane For The Cure," "Karen Beth Young - Public Figure," and "Join Karen Petition Facebook Say No to 5000 Friends."  Young sent "friendvites" to others she believed were interested in cancer-related issues and developed "genuine and heartfelt" relationships with those she met online.  Young's personal page grew to include approximately 4,300 "friends."

While engaged in social networking on Facebook, Young came across a page titled "DEAR LORD, THIS YEAR YOU TOOK MY FAVORITE ACTOR, PATRICK SWAYZIE. YOU TOOK MY FAVORITE ACTRESS, FARAH FAWCETT.  YOU TOOK MY FAVORITE SINGER, MICHAEL JACKSON.  I JUST WANTED TO LET YOU KNOW, MY FAVORITE PRESIDENT IS BARACK OBAMA. AMEN" ("Prayer for Death" page).  Young spoke out against the page and was subjected to "hatred, violence, discrimination, threats, pornography, . . . and personal attacks" as a result.  Compl. ¶ 11.  In particular, her profile picture–a  photo of her holding a baby with her sister in church–was reposted "with the baby as a giant penis shooting sperm" in her sister's face.  *Id.*  Young joined a petition requesting that Facebook remove the Prayer for Death page.  Young alleges that her account was modified to prevent her from accessing the petition to remove the Prayer for Death page.[3]

In June 2010, Young's Facebook account was deactivated for the first time.  According to an email from Facebook, Young's account was disabled for behavior identified as harassing or threatening to other people on Facebook, including sending friend requests to people she did not know, regularly contacting strangers, and soliciting others for dating or business purposes.  Resp. Ex. A-1.  She was told that the decision was final and could not be appealed.  *Id.*  Young made

---

[2]For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  This relevant facts are drawn from Young's complaint and related exhibits.

[3]It is not clear if Young was denied access to this page separate from the deactivation of her account, or if her access was terminated as a result of deactivation.

Case No. 5:10-cv-03579-JF/PVT
ORDER GRANTING MOTION TO DISMISS
(JFLC3)

numerous email and telephone inquiries regarding the deactivation, but she did not receive any "human interaction" regarding her account. Compl. ¶ 7. Young then drove from her home in Maryland to Facebook headquarters in Santa Clara, California. At Facebook headquarters she was told by a receptionist that no one could meet with her in person or by telephone, although she was allowed to fill out a form requesting assistance.

Two days later, Young received an email stating that her account had been disabled because Facebook security systems determined that she had been sending friend requests too quickly or that her friend requests were being ignored at a high rate. Compl. Ex. D-4. She was told that her account would be reactivated, but she was warned that sending friend requests to people she did not know or other violations of Facebook's Statement of Rights and Responsibilities, would result in her account being disabled permanently. *Id.* Young responded to the email requesting clarification and a personal meeting. Receiving no response, she returned to Maryland, where after two days her account was deactivated again. She received another email informing her that her account had been disabled permanently for violating the Statement of Rights and Responsibilities, that it would not be reactivated for any reason, and that she would not be provided further information about her violation or an opportunity to appeal. *Id.* Young then drove to California a second time, where she commenced the instant proceedings.

## II.  STANDARD OF REVIEW

Under Fed. R. Civ. P. Rule 8(a), a plaintiff must plead her claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 544 (2007). Dismissal for failure to state a claim under Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The pleading of a *pro se* litigant is held to a less stringent standard than a pleading drafted by an attorney, and is afforded the benefit of any doubt. *Hebbe v. Pliler*, 611 F.3d 1202, 1205 (9th Cir. 2010). Further, a *pro se* litigant must be given leave to amend unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

3

# III.  DISCUSSION

**A.    Young Has not Stated a Claim For Violation of Her First and Fourteenth Amendment Rights**.

Young claims that Facebook's conduct violated her First and Fourteenth Amendment rights.[4]   She brings suit under 42 U.S.C. § 1983, which provides a remdy for deprivations of rights occurring "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  However, because Young has not alleged any action under color of state law, she fails to state a claim under § 1983.

Section 1983 was designed to protect individuals from abuse "made possible only because the wrongdoer is clothed with authority of state law."  *Id.* at 49.  Only conduct that is "fairly attributable to the government" may be redressed through § 1983.  *See Liao v. Ashcroft*, No. C 08-2776 PJH, 2009 WL 636116, at *4 (N.D. Cal. Mar. 11, 2009) ("Section 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong.").  In order to maintain a § 1983 claim against a private individual, a plaintiff must show "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated

---

[4]The basis of Young's Fourteenth Amendment claim appears to be that she has been deprived of equal protection because she suffers from bi-polar disorder and Facebook failed to accommodate her need for human interaction in the process of disabling her account. While this claim could have been asserted under the Americans with Disabilities Act (ADA), Young does not allege a claim for relief under the ADA.  In the "Factual History" section of the complaint, Young does state that "Facebook has failed to comply" with Title III of the ADA, Compl. at 3, but she makes no reference to the ADA in her claims for relief, and Facebook has not addressed the adequacy of a potential ADA claim in its motion to dismiss.  Even though *pro se* litigants are held to a more liberal pleading standard than those represented by counsel, the complaint dose not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 544.

    In any case, to prevail on a discrimination claim under Title III, a plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability.  *Ariz. ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666, 670 (9th Cir. 2010).  The Ninth Circuit has indicated that "places of public accommodation" under the ADA are limited to actual physical spaces. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000).  In order to state a claim, Young would have to show that Facebook was a place of public accommodation within the meaning of the ADA.

1  as that of the State itself." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir.

2  2008) (en banc) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288,

3  295 (2001)).

4        In her opposition to the instant motion, Young contends that the state action requirement

5  is met because Facebook is "a willful participant in joint action with the State and its agents,"

6  pointing to contracts between Facebook and the General Services Administration allowing

7  Facebook pages for federal agencies.[5]  Resp. at 29.  She contends that as a result of these

8  contracts, "[s]ocial networking, blogging, dialogue and varied means of online interaction are

9  now federally intertwined."  *Id.*  She points out that in *Burton v. Wilmington Park Authority*, 365

10  U.S. 715 (1961), the Supreme Court held that a private restaurant leasing space from a city acted

11  under color of state law in discriminating against African-Americans.  In *Burton*, however, the

12  alleged discrimination grew directly from the restaurant's lease with the city–the city was leasing

13  the seats in the restaurant in which Mr. Burton was not allowed to sit.  Here, Young shows no

14  relationship between Facebook's government contracts and the particular actions that she alleges

15  violated her rights.   Even if some Facebook activities could rise to the level of state action, such

16  activities would be relevant only if Young's injuries were cause by those activities.  *See*

17  *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812-13 (9th Cir. 2010) (noting that

18  "an entity may be a State actor for some purposes but not others").  None of the injuries alleged

19  by Young appears to have any relationship to Facebook's government contracts.

_____

24    [5]  Technically, if Young's contention is that Facebook was acting under color of federal law, rather than state law, her suit should be brought directly under the First Amendment, *see Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986), and the equal protection component of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228 (1979), rather than under § 1983. While bringing a claim for violations under color of federal law is subject to its own set of complications and limitations, the "standard[s] for determining whether an action is governmental are the same whether the purported nexus is to the state or the federal government."  *Mathis v. Pacific Gas & Elec. Co*, 981 F.2d 1429 (9th Cir. 1989).

Case No. 5:10-cv-03579-JF/PVT
ORDER GRANTING MOTION TO DISMISS
(JFLC3)

**B.      Young Has Not Stated a Claim for Breach of Contract.**

Under California law, "when a contract has been reduced to writing, a court must ascertain the parties' intent from the writing alone, if possible." *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 836 (9th Cir. 1996) (citing Cal. Civ. Code § 1636).  In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached.  *Miron v. Hermalife Int'l, Inc.*, 11 Fed. Appx. 927, 929 (9th Cir. 2001).

Young alleges generally that Facebook violated its Statement of Rights and Responsibilities, its advertised Facebook Principles, and its Privacy Policy. However, Young has not identified with any particularity how Facebook breached any obligation owed to her.  She states that her claims "are based on user content, page content, poor business practices and poor business procedures."  Resp. at 33.  She points to Facebook's failure to enforce provisions of its Statement of Rights and Responsibilities that call for users not to engage in bullying, intimidating, or harassing other users or posting content that is "hateful, threatening, or pornographic; incites violence; or contains nudity."  Compl. Ex. A at 1.[6]  However, while these provisions place restrictions on users' behavior, they do not create affirmative obligations. Indeed, the Statement of Rights and Responsibilities includes an express disclaimer: "WE DO NOT GUARANTEE THAT FACEBOOK WILL BE SAFE OR SECURE.  FACEBOOK IS NOT RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD PARTIES."  Compl. Ex. A at 2.

---

[6]Young also alleges that Facebook repeatedly has violated its own Facebook Principles. Even assuming such allegations are true, as the Court must at this stage of the litigation, they do not establish a breach of contract.  While the Statement of Rights and Responsibilities indicates that it "derives from the Facebook Principles," the Facebook Principles do not create legal obligations or grant a user the right to enforce those principles in court.  *See Green v. America Online*, 318 F.3d 465, 472 (3d Cir. 2003) (holding that "Green failed to state a claim for breach of contract because . . . by their terms, the Member Agreement and Community Guidelines were not intended to confer any rights on Green and AOL did not promise to protect Green from the acts of other subscribers.").

**C.    Young Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Under California law, "there is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (Cal. Ct. App. 1960).  The "implied covenant of good faith is read into contracts in order to protect the express covenants or promises in the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Schulken v. Wash. Mut. Bank*, No. C. 09-02708 JW, 2009 U.S. Dist. LEXIS 114030, at *16 (N.D. Cal. Nov. 9, 2009).  To state a claim for breach of the implied covenant, a plaintiff must show "that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 22 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990).  The implied covenant will not apply where "no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms." *In re Facebook PPC Advertising Litigation*, No. 5:09-cv-03043-JF, 2010 U.S. Dist. LEXIS 39776, at *14 (quoting *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007)).  In other words, a party must take on an obligation, either expressly or impliedly, before it can be said to have acted in bad faith by not carrying it out.

Young alleges that Facebook breached the implied covenant of good faith and fair dealing by (1) failing to provide the safety services it advertised and (2) violating the spirit of its terms of service in handling the termination of her account.  Young's first contention is without merit because , as noted above, Facebook expressly disclaimed any duty to protect users' online safety.  The Statement of Rights and Responsibilities notes that, "We do our best to keep Facebook safe, but we cannot guarantee it."  Compl. Ex. A-1.  Because Facebook did not assume the duty alleged by Young, it could not have acted in bad faith by breaching such a duty.

Young's second contention is not so easily put aside.  Facebook acknowledges that its Statement of Rights and Responsibilities is an operative contract.  MTD at 7.  As with all contracts, Facebook has an implied duty not to frustrate the other party's right to receive the

7

benefits of the agreement actually made.  The agreement in this case is to provide users access to

Facebook's services subject to certain terms and conditions.  While users do not pay for the

services directly, Facebook benefits from user activity through the sale of advertising.  Facebook

expressly reserves the right to terminate the accounts of users who "violate the letter or the spirit

of this Statement, or otherwise create risk or possible legal exposure" for Facebook, Compl. Ex.

A-2, but it does not expressly reserve the right to terminate an account for any reason, and

indicates in its Statement of Principles that users "should not have their presence on the

Facebook Service removed for reasons other than those described in Facebook's Statement of

Rights and Responsibilities."  Compl. Ex. B-1.  It is at least conceivable that arbitrary or bad

faith termination of user accounts, or even termination of user accounts with no explanation at

all, could implicate the implied covenant of good faith and fair dealing.

However, Young's current complaint does not allege that the termination of her account

was undertaken in bad faith or violated Facebook's contractual obligations.  Instead, she alleges

that she was deprived of human interaction the process surrounding the termination of her

account.  The termination provision of the Statement of Rights and Responsibilities provides that

when a user account is terminated, Facebook "will notify you by email or at the next time you

attempt to access your account." *Id.*  Given the express language, Facebook could not have an

implied obligation to provide a different termination process.

**D.   Young Has Not Stated a Claim for Negligence.**

In order to state a claim for negligence, a plaintiff must allege that: (1) the defendant has

a legal duty to use due care; (2) the defendant breached such legal duty; (3) the defendant's

breach was the proximate or legal cause of the resulting injury; and (4) there was resulting

damage to the plaintiff. *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996).

Young's claim fails to make it over the first hurdle.  Young alleges that Facebook had a

"duty to use due care when hiring and training personnel to monitor and enforce website activity

according to their outlined contractual agreement."  Compl. at 11.  However, as noted above, the

Statement of Rights and Responsibilities expressly disclaims any duty to provide for the safety

of Facebook users.  Young also claims that Facebook as "failed in its responsibility to condemn

8

all acts or statements that inspire, imply, incite, or directly threaten violence against anyone." *Id.* Young provides no basis from which to infer such a broad duty. Such an obligation would be inconsistent with the policy choices undertaken by Congress in the Communications Decency Act, which sharply limits the responsibility of interactive computer service providers for the content provided by third parties. *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008).

**E.      Young Has Not Stated a Claim for Fraud.**

Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity. Rule 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc). "Conclusory allegations do not suffice." *Shroyer v. New Cingular Wireless Servs.*, No. 08-55028, 2010 U.S. App. LEXIS 19814, at *13 (9th Cir. Sept. 20, 2010).

Young alleges that Facebook's "terms of agreement are deceptive in the sense of misrepresentation and false representation of company standards," and "acted with conscious disregard in relation to its terms of agreement." Compl. at 12. These conclusory statements do not giveFacebook notice of the particular misconduct that is alleged to constitute fraud. Young has not indicated which statements by Facebook were misleading or false, or in what ways the statements were misleading or false.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Facebook's motion to dismiss is GRANTED, with leave to amend. Any amended complaint must be filed within thirty (30) days. IT IS SO ORDERED.

DATED: 10/25/2010

JEREMY FOGEL
United States District Judge

9

Case No. 5:10-cv-03579-JF/PVT
ORDER GRANTING MOTION TO DISMISS
(JFLC3)

1    Copies of this Order have been served on the following persons:

2    Gary Evan Weiss gweiss@orrick.com, sdonlon@orrick.com

3    Julio Cesar Avalos javalos@orrick.com, adalton@orrick.com, kime@orrick.com

4    Thomas J. Gray tgray@orrick.com, vcloyd@orrick.com

5    Karen Beth Young
     P.O. Box 2335
6    San Jose, CA 95109

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:10-cv-03579-JF/PVT
ORDER GRANTING MOTION TO DISMISS
(JFLC3)